UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID L. TOUSIGNANT, individually and on behalf of all others similarly situated, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>METROPOLITAN LIFE INSURANCE CO., )<br>)<br>Defendant. ) | 22 C 0735 |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Before the Court is Defendant Metropolitan Life Insurance Co.'s ("MLIC") Motion to Dismiss Plaintiff David L. Tousignant's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). Tousignant brings this action alleging Defendant violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/2 *et seq.*, by collecting monthly premium payments from Tousignant for his Accidental Death and Dismemberment insurance policy ("AD&D Policy"), including "dependent life insurance coverage." Tousignant contends that MLIC fraudulently collected his premium for a policy that MLIC "had no intention of paying out on" because MLIC's policy does not apply to dependents over the age of 26, and at the time Tousignant obtained the coverage his now deceased son was over 26. For the following reasons, the Court grants Defendant's Motion.

## BACKGROUND

Tousignant filed this lawsuit in the Circuit Court of Cook County, Illinois on December 15, 2021. *See* Dkt. # 1. On February 9, 2022, MLIC removed the case to federal court based on federal question jurisdiction. *Id*.

The following facts come from the Complaint and are assumed true for the purpose of this Motion. *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013). All reasonable inferences are drawn in Tousignant's favor. *League of Women Voters of Chi. v. City of Chi.*, 757 F.3d 722, 724 (7th Cir. 2014).

Tousignant is an employee of Union Pacific Railroad ("UPR"). MLIC is an insurance company that issued a series of policies for AD&D insurance to Tousignant, including dependent life insurance coverage. Under the AD&D Policy, coverage generally ends for dependents at age 26, although there are exceptions. When Tousignant obtained the AD&D Policy from MLIC, his son Derrek A. Tousignant was 27 years old. Derrek passed away on September 19, 2020, at 31 years old. On September 24, 2020, MLIC sent a letter to Tousignant outlining how to make an accidental life insurance claim under his dependent life insurance coverage. Tousignant filed a claim with MLIC on December 26, 2020.

On March 12, 2021, MLIC sent a second letter to Tousignant, this time denying his claim for AD&D benefits (the "Denial"). The Denial noted that Tousignant's AD&D Policy is "an employee welfare benefit plan regulated by" the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*., and that

2

MLIC, "as claims fiduciary, must administer the claims in accordance with ERISA and the documents and instruments governing the Plan." Dkt. # 1-1, Ex. 3, at 1. The Denial included the following pertinent sections of the Plan:

> "DEFINITIONS OF CERTAIN TERMS USED HEREIN …
>
> 'Dependent' means your spouse or your natural child except for …
>
> 6. a child who is age 26 or older and dependent on you for financial support.
>
> …
>
> If a Dependent child is a Covered Person on the day before that child has reached the applicable age limit, that child will continue to be a Dependent after the age limit as long as:
>
> > a. That child is and remains unable to work in self-sustaining employment because of:
> >    i. physical handicap; or
> >    ii. mental retardation; and
> > b. that child is and remains chiefly dependent upon you for support; and
> > c. that child is and remains a Dependent, as defined, except for the age limit; and
> > d. that child is unmarried; and
> > e. and you give us proof, when we ask for it, that the child is and remains so unable to work and dependent upon you since the age limit. We will not ask for proof more than once a year. The proof must be satisfactory to us; and
> > f. you make any payment which is required by the Employer."
>
> "WHEN BENEFITS END …
>
> C. Your Dependent Life Benefits will end on the earliest of…
>
> 2. the date that the Dependent ceases to be your Dependent".
>
> …
>
> "ACCIDENTAL DEATH OR DISMEMBERMENT BENEFITS

3

> A. Coverage
>
> We will pay Accidental Death or Dismemberment Benefits for a Covered Loss shown in Section C if …
>
> 2. a Dependent is injured in an accident which occurs while Accidental Death or Dismemberment Benefits are in effect for that Dependent…
>
> D. Exclusions
>
> We will not pay for any Covered Loss shown in Section C if it in any way results from, or is caused or contributed to by …
>
> 5. the use of any drug or medicine".

*Id*. at 1–2.

The Denial then explained MLIC's two reasons for denying Tousignant's claim: (1) that Derrek "did not qualify for accidental death coverage as your dependent" because he "was 31 years of age when he passed away and was above the limiting age permitted by the Plan, with no evidence presented that he would have qualified for continued coverage after age 26"; and (2) "the death was due to the use of a drug which is excluded by the Plan." *Id*. at 2. The Denial also recounted that "[t]he State of Illinois Certificate of Death for [Derrek] states he was born June 13, 1989 and was 31 years of age when he passed away on September 19, 2020 due to 'Fentanyl Intoxication' caused by 'Fentanyl Related Overdose.'" *Id*.

Furthermore, the Denial explained that Tousignant had the right under ERISA to appeal MLIC's decision within 60 days, how to make such an appeal, and that "[i]n the event the appeal is denied in whole or in part, the claimant has the right to bring a civil action under Section 502(a) of ERISA." *Id*.

4

On May 4, 2020, Tousignant sent a letter to MLIC, stating that MLIC incorrectly "processed the claim using my deceased son's name, David **A**. Tousignant who was also a Railroad employee who has since passed away and you denied the claim. . . . I David **L**[.] Tousignant, am asking you to reprocess this correctly using **my** information." Dkt. # 1-1, Ex. 5 (emphasis in original).

The following additional facts come from Tousignant's employee benefit plan document (the "Employee Benefits Plan") which includes the AD&D Policy.[1]

The first page of the Employee Benefits Plan indicates that it includes the AD&D Policy, "Optional Life Benefits", and "Dependent Life Benefits." Dkt. 11-3, at 2. The next page states that "[b]enefits are provided through a group policy issued to Union Pacific Corporation by Metropolitan Life Insurance Company." *Id*. at 3. The Employee Benefits Plan further states that MLIC "[c]ertifies that, under and subject to the terms and conditions of the Group Policy issued to the Employer, coverage is provided for each Employee as defined herein" and lists the group policy number. *Id*. at 4.

The Employee Benefits Plan indicates that the AD&D Policy is covered by ERISA. In a section titled "ERISA INFORMATION", the document lists "Accidental Death or Dismemberment Benefits" under the "Coverage" section. *Id*. at 50. Under

---

[1] The Employee Benefits Plan is attached as an exhibit to MLIC's Motion to Dismiss and the Court may consider it. *See Rosenblum v. Travelbyus.com Ltd*., 299 F.3d 657, 661 (7th Cir. 2002) ("Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim. Such documents may be considered by a district court in ruling on the motion to dismiss."). The Complaint refers to the terms of the Employee Benefits Plan and, because Tousignant's IFCA claim centers on whether the AD&D Policy covered his son as a dependent, the Court finds the Employee Benefits Plan to be "central to" the claims.

5

"Type of Plan" it states: "Employee Welfare Plan including: Life Benefits [and] Accidental Death or Dismemberment Benefits". *Id*. The Employee Benefits Plan then includes a "STATEMENT OF ERISA RIGHTS" and explains that "[i]f you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or Federal court." *Id*. at 53.

The Employee Benefits Plan defines the "policyholder" as UPR (*id*. at 8) and states that UPR is both the "plan sponsor" and "plan administrator" (*id*. at 50). It directs the participant to contact UPR for routine questions about claims (*id*. at 51) and further describes the "Discretionary Authority" of UPR:

> In carrying out their respective responsibilities under the Plan, the Plan Administrator and other Plan fiduciaries shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan. Any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious.

*Id*. at 52.

Tousignant alleges that, because his son Derrek was over the age of 26 when Tousignant obtained his AD&D Policy, and MLIC collected a monthly premium from Tousignant from the time Derrek was 27 until he passed away at 31, MLIC "collected premium for a policy that by its very terms they had no intention of paying out on." Dkt. 1-1, ¶¶ 10–11. According to Tousignant, "[i]n that the said policies terminate when the child is 26, there is no purpose in issuing the policies for 'dependent life insurance' to persons above the age of 26 except to fraudulently collect premium for no purpose."

6

*Id*. ¶ 8; *see also id.* ¶ 17 ("from the very start of the 'dependent life coverage' David L. Tousignant was and were abused and provided the equivalent of 'life insurance' of no benefit, no value, which could under no circumstance pay off and the premium/fee was a fraudulent payment taken for no benefit and no potential benefit.").

Tousignant filed a five-count complaint, primarily alleging that MLIC violated the ICFA (Count I). Tousignant also asserted estoppel (Count IV) but dropped that claim in his Response.[2] *See* Dkt. # 15, at 2. The remaining counts relate to Tousignant's class allegations (Counts II, III, V). MLIC moves to dismiss Tousignant's Complaint with prejudice for failure to state a claim.

MLIC first argues that ERISA preempts Tousignant's claims in their entirety because ERISA preempts state law claims that call upon the Court to interpret the terms of ERISA-regulated insurance plans like the one at issue here.

Next, MLIC asserts that Tousignant failed to exhaust his administrative remedies, which ERISA requires prior to filing suit. Tousignant never raised the issues in this lawsuit to MLIC on a claim appeal prior to filing the Complaint, and courts routinely dismiss similar complaints.

MLIC further argues that Tousignant has failed to allege any misrepresentation by MLIC and therefore has not sufficiently pled an IFCA claim. Rather, the express

---

[2] Tousignant seems to argue that without his estoppel claim, the case can return to state court. *See* Dkt. # 15, at 2. Tousignant has not moved to remand the action to state court, but in any case, federal question jurisdiction remains intact as to the IFCA claim. As described below, the Plan is regulated by ERISA, a law of the United States. *See* 28 U.S.C. § 1331. When raised as a defense to a state law claim, preemption by a law like ERISA creates federal question jurisdiction and allows for removal to federal court. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207–09 (2004).

7

terms of the Plan contradict Tousignant's claims that MLIC collected premium for AD&D coverage that could never pay off. MLIC additionally contends that Tousignant's IFCA claim fails because he does not allege any facts indicating that MLIC acted with fraudulent intent.

Finally, MLIC asserts that Tousignant's Counts II, III, and V should be dismissed because they relate to Plaintiff's class allegations and do not independently state a legal theory or cause of action.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The Court accepts as true well-pled facts in the complaint and draws all reasonable inferences in favor of the plaintiff. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). The allegations in the complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A plaintiff need not provide detailed factual allegations, but it must provide enough factual support to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The claim must be described "in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the

8

elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a Rule 12(b)(6) motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible if the complaint contains sufficient alleged facts that allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

When claiming fraud, a party "must state with particularity the circumstances constituting fraud []. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The requirement that fraud be pled with particularity "ensures that plaintiffs do their homework before filing suit and protects defendants from baseless suits that tarnish reputations." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 439 (7th Cir. 2011). This requirement is not rigid, and what must be alleged will vary depending on the facts of the case. *Id*. at 442. The heightened pleading standard applies to all allegations of fraud (such as misrepresentation), not merely claims labeled fraud. *Id*. at 447.

## DISCUSSION

MLIC moves to dismiss Tousignant's Complaint with prejudice for failure to state a claim on five grounds:[3] (1) Tousignant's claims are preempted by ERISA; (2) Tousignant failed to exhaust administrative remedies as required by ERISA; (3) Tousignant failed to allege any deceptive act, misrepresentation, or omission by MLIC; (4) Tousignant failed to allege any facts suggesting that MLIC acted with fraudulent

---

[3] Because Tousignant dropped his estoppel claim, the Court does not address it.

intent; and (5) Tousignant's claims relating to his class allegations (Counts II, III, and V) do not state a legal theory or cause of action. The Court agrees that the AD&D Policy is governed by ERISA, that Tousignant's IFCA claim is preempted by ERISA, and that the class allegations (Counts II, III, and V) are dependent on Tousignant's IFCA claim. The Court therefore does not reach the question of exhaustion or the merits of the IFCA claim.

As an initial matter, the Court finds that the AD&D Policy is an "employee welfare benefit plan" as defined by ERISA. *See* 29 U.S.C. § 1002(1) ("any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance of otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the even of sickness, accident, disability, death or unemployment, or vacation benefits . . . ."). ERISA's relevance is evident from documents that Tousignant received from MLIC. *See* Dkt. # 1-1, Ex. 3, at 1–2; Dkt. # 11-3, at 50-54.

Tousignant's arguments that the events at issue "have nothing to do with" ERISA are unpersuasive. Dkt. # 15, at 6–8. He seems to argue that his AD&D Policy falls within ERISA's safe harbor. 29 C.F.R. § 2510.3-1(j). But the AD&D Policy is part of UPR's group policy under the Employee Benefits Plan. The Seventh Circuit has found that, for purposes of determining whether a policy is subject to ERISA, individual

10

policies should not be "unbundled" from an employer's broader benefits package. *See Postma v. Paul Revere Life Ins. Co.*, 223 F.3d 533, 538 (7th Cir. 2000); *see also Cehovic-Dixneuf v. Wong*, 895 F.3d 927, 929 (7th Cir. 2018) ("We rejected such an argument in *Postma*. . . . This rule finds support in every other circuit that has considered this issue."). Furthermore, an employer "who creates by contract with an insurance company a group insurance plan and designates which employees are eligible to enroll in it is outside the safe harbor created by the Department of Labor regulation." *Postma*, 223 F.3d at 537. In *Garrity v. Sun Life and Health Insurance Co.*, a policy was governed by ERISA when it was "bundled" with an ERISA-governed policy in "one comprehensive plan", directed participants to contact the employer with questions, informed participants of their rights under ERISA, and listed the employer as the policyholder, sponsor, and administrator. 2022 WL 972290, at *3–4 (N.D. Ill. 2022). The similar facts presented here exclude the AD&D Policy from ERISA's safe harbor. *See supra*, at 5–6.

Having determined that the AD&D Policy is regulated by ERISA, the Court turns to the question of preemption. Congress passed ERISA to establish a comprehensive federal scheme to protect the participants and beneficiaries of employee benefit plans. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 44 (1987). ERISA contains a broad preemption clause, which specifies that the provisions of ERISA "supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a).

The Seventh Circuit has identified three factors for determining whether a claim falls within the scope of Section 502(a) and thus is preempted by ERISA: (1) "[w]hether the plaintiff [is] eligible to bring a claim under that section"; (2) "whether the plaintiff's cause of action falls within the scope of an ERISA provision that the plaintiff can enforce via [Section] 502(a)"; and (3) "whether the plaintiff's state law claim cannot be resolved without an interpretation of the contract governed by federal law." *Klassy v. Physicians Plus Ins. Co.*, 371 F.3d 952, 955 (7th Cir. 2004). The second factor considers whether plaintiff's claim "concerns her rights 'to recover benefits due to [her] under the terms of [her] plan.'" *Id*.

As to the first factor, Tousignant is the participant of the Plan and thus eligible to bring a claim under Section 502(a). *See* 29 U.S.C.A. § 1132(a)(1). As to the second factor, Tousignant's IFCA claim falls within the scope of ERISA because it concerns his right to recover accidental death benefits under the terms of his AD&D Policy. *See Garrity*, 2022 WL 972290 at *3.

The Court also finds that the third factor is satisfied. The essence of the IFCA allegations is that MLIC committed fraud by selling and collecting premium payments for Tousignant's "worthless" AD&D Policy that would never pay off. In order to determine the truth of that assertion, the Court would have to "interpret or apply" the terms of the ERISA-regulated Plan. *See Bowles v. Quantum Chem. Co*., 266 F.3d 622, 631 (7th Cir. 2001); *see also Garrity*, 2022 WL 972290 at *4 ("For example, if the Court were to determine that Sun Life fairly interpreted the policies' terms and

rightfully denied Garrity's claim, then Sun Life could not have breached its contract or fraudulently misrepresented the state of Garrity's claim."); *Lamkins v. Dress Barn, Inc.*, 2015 WL 3407372, at *4 (N.D. Ill. 2015) ("If the Benefits Plan did not cover the medical claim, then Defendants could not have fraudulently misrepresented the scope of coverage as alleged."); *Agranoff v. Lenscrafters, Inc.*, 2007 WL 4557080, at *3 (N.D. Ill. 2007) ("But for the existence of 'agreed upon' discount terms in the benefit plan, Agranoff would not have a claim for [] consumer fraud."); *Weeks v. UMR, Inc.*, 370 F. Supp. 3d 943, 952–53 (C.D. Ill. 2018) ("Plaintiffs' ICFA claim relies on the Plan's existence and a determination that Defendant made a deceptive statement about its terms. Plaintiffs argue these acts occur outside of the Plan because they involve misstatements about it, but to agree with Plaintiffs, the Court would have to interpret the Plan's terms.").

The Court rejects Tousignant's argument that the fraud claim "does not involve administration of the claim; it involves fraudulently selling insurance with no benefit." Dkt. # 15, at 2. If any state law claim "is within the scope of Section 502(a) of ERISA it is completely preempted, no matter how the [plaintiffs] have characterized it." *Klassy*, 371 F.3d at 954 (affirming dismissal of plaintiff's state law malpractice claim as preempted under ERISA).

Furthermore, to the extent Tousignant seeks to implicate ERISA's savings clause, which exempts from preemption "any law of any State which regulates

13

insurance" (29 U.S.C. § 1144(b)(2)(A)), he cannot. The IFCA does not regulate insurance for purposes of the savings clause. *Lamkins*, 2015 WL 3407372 at *4.

ERISA therefore preempts Tousignant's IFCA claim and the Complaint is dismissed in its entirety.

## CONCLUSION

For the foregoing reasons, the Court grants Defendant's Motion to Dismiss (Dkt. # 10). Tousignant's Complaint is dismissed without prejudice. It is so ordered.

Dated: 6/30/2022

_____
Charles P. Kocoras
United States District Judge